UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-3211 |
| | § | |
| BICO DRILLING TOOLS, INC., | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before this court are two motions to dismiss defendant and counterplaintiff BICO Drilling Tools, Inc.'s ("BICO") counterclaims. Dkt. 24, 30. After considering the motions, related briefing, the arguments made during an oral hearing that was held on Tuesday, May 1, 2018, and the applicable law, the court is of the opinion that both motions should be DENIED.

### I. BACKGROUND

This is a patent case relating to plaintiff and counterdefendant Schlumberger Technology Corporation's ("Schlumberger") patent for "Optimized Liner Thickness for Positive Displacement Drilling Motors," U.S. Patent No. 6,604, 921 ("the '921 Patent"). Dkt. 1. The '921 Patent was filed on January 24, 2002, and the date of the patent is August 12, 2003. Dkt. 25, Ex. D. Schlumberger contends that BICO infringed one of more claims of the '921 Patent, including but not limited to Claims 1 and 8, by importing, making, using, offering to sell, and/or selling products or systems that embody the patented inventions, including but not limited to stators BICO uses in various products. Dkt. 1.

In BICO's second amended answer and counterclaim, it asserts several affirmative defenses including non-infringement, invalidity, and inequitable conduct. Dkt. 29. It asserts the following

counterclaims, which are parallel to the aforementioned affirmative defenses: (1) a declaratory judgment of non-infringement of the '921 Patent; (2) a declaratory judgment of invalidity of the '921 Patent; and (3) a declaratory judgment of unenforceability of the '921 Patent due to inequitable conduct. *Id.*

Schlumberger now moves for dismissal of a portion of the second and all of the third counterclaim. Dkts. 24, 30. Schlumberger contends there is no plausible reading of the alleged prior art that supports BICO's claim that the patent is invalid because prior art anticipated or made obvious a claim in the patent-in-suit. Dkt. 24. Additionally, Schlumberger contends that the inequitable conduct counterclaim fails because all of the alleged prior art was disclosed to the patent examiners. Dkt. 30.

These motions are fully briefed and argued. The court will first review the relevant legal standards and then discuss whether dismissal of the second and third counterclaims is appropriate.

## II. LEGAL STANDARD

### A. Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Generally, when "deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's

2

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible-enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

Under Federal Rule of Civil Procedure 9(b), in cases in which a party alleges fraud or mistake, the "party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A claim of inequitable conduct must be plead with particularity pursuant to the requirements of Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009); *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.2d 1347, 1356 (Fed. Cir. 2007) (requiring inequitable conduct to be pled with particularity and noting that the Federal Circuit applies its own law "to the question of whether the pleadings [are] adequate"). To plead the circumstances of inequitable conduct with particularity "requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp.*, 575 F.3d at 1327. Additionally, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the [U.S. Patent and Trademark Office ("USPTO")]." *Id.* at 1328-29.

**B.    Invalidity of a Patent**

BICO asserts invalidity under 35 U.S.C. §§ 102 and 103, and portions of § 112. Section 102(a) indicates that a person is not entitled to a patent if the claimed invention was already patented,

3

"described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1). "Section 102 embodies the concept of novelty—if a device or process has been previously invented (and disclosed to the public), then it is not new, and therefore the claimed invention is 'anticipated' by the prior invention." *NewMoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008). "[I]n order to show anticipation, the proponent must show 'that the four corners of a single, prior art document describe every element of the claimed invention.'" *Id.* (quoting *Xerox Corp. v. 3Com Corp.*, 458 F.3d 1310, 1322 (Fed. Cir. 2006)). Additionally, the prior art reference must "disclose those elements 'arranged as in the claim.'" *Id.* (quoting *Connell v. Sears Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)).

Under § 103,

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

35 U.S.C. § 103. Section 112 relates to the form of the patent application. 35 U.S.C. § 112.

**C.     Inequitable Conduct**

"A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the [USPTO] during prosecution." *Dig. Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). A party therefore "may show inequitable conduct by producing clear and convincing evidence of (1) material prior art, (2) knowledge chargeable to the patent

4

applicant of prior art and its materiality; and (3) the applicant's failure to disclose the prior art to the [USPTO] with intent to mislead." *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 972 (Fed. Cir. 2010). "Information is material if there is a 'substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.'" *Id.* (quoting *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1559 (Fed. Cir. 1984)). Because there is rarely direct evidence supporting the intent element, it is generally "proven by inferences drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred." *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1384 (Fed. Cir. 1998). Importantly, "the scope and content of prior art and what the prior art teaches are questions of fact." *Dig. Control, Inc.*, 437 F.3d at 1319.

### III. ANALYSIS

**A.  Invalidity**

Here, BICO contends in its counterclaim that the '921 Patent is invalid because (1) as early as 1997 Wilhelm Kachele Gmbh of Welheim, Germany ("Kachele") commercialized stators, motors, and power sections that embody the '921 Patent by publicly displaying, offering for sale, and selling those products to customers; (2) as early as December 2000, BICO commercially used these same stators, motors, and power sections purchased from Kachele; (3) prior to January 24, 2002 (the date the patent was filed), oil field services companies developed and commercialized a class of "Even Wall" stators that included internal liners that were thickest proximate to the inwardly projecting lobes of the stator; (4) the '921 Patent was anticipated by U.S. Patent No. 6,543,132 ("the '132 Patent") and U.S. Patent No. 5,145,342 ("the '342 Patent"); (5) U.S. Patent No. 5,171,138 ("the '138 Patent") and the '342 Patent make obvious the apparatuses claimed in the '921 Patent by disclosing each of the claimed elements, and a person of ordinary skill in the art would have known that the

thickness of the liner varied; and (6) the '921 Patent fails to sufficiently describe the patent as broadly as Schlumberger interprets it. Dkt. 29.

Schlumberger moves for dismissal of the invalidity counterclaim for failure to state a claim under Rule 12(b)(6). Dkt. 24. Schlumberger contends there is no plausible reading of the alleged prior art that could anticipate or make obvious any claim in the patent-in-suit. Id. Schlumberger asserts that the stator in the '921 Patent must have a liner "'wherein a thickness of the liner is at a maximum proximate the at least two radially inwardly projecting lobes' of an inner surface of the external tube of the stator." Id. (quoting the '921 Patent). Schlumberger asserts that the alleged prior art stators have liners with uniform thickness. Id. It argues that BICO's statement that these earlier patents disclose a liner "that was thickest proximate to the inwardly projecting lobes of the stator" is not plausible because it is contrary to the express teachings of these patents. Id.

BICO argues that its counterclaim asserts that earlier stators, like the stator in the '921 Patent, also had uneven liners thicker at the lobes, which makes the '921 Patent invalid. Dkt. 25. BICO points out that its allegations that the prior liners were uneven must be accepted as true when analyzing Schlumberger's motion under Rule 12(b)(6). Id. BICO asserts that the references it cites in its counterclaim support its contention that the earlier liners are thicker at the lobes because they all say the liners are "substantially" or "relatively" uniform, not that they are <u>absolutely</u> uniform. Id. BICO argues that the assertion of uniform liners in the prior art patents is in relation to traditional liners that were even thicker at the lobes than the liners in the '921 Patent and the other patents discussed. Id. Additionally, BICO asserts that Schlumberger failed to address its contention that the '138 Patent teaches that the thickness of the elastomer may be varied. Id.

In reply, Schlumberger contends that the court need not accept BICO's factual assertions as true if they contradict the actual contents of the alleged prior art patents since these patents are

referred to in the counterclaim. Dkt. 27. Schlumberger asserts that the text of the '132, '342, and '138 patents "unequivocally contradicts BICO's allegations by expressly and repeatedly describing the respective stator liners as having a 'uniform thickness.'" *Id.* Schlumberger argues that the USPTO reviewed the alleged prior art patents and determined that they do not anticipate or render obvious the '921 Patent claims and that the '921 Patent is thus presumed valid over all of BICO's alleged prior art patents. *Id.* Moreover, Schlumberger contends that even if one interprets the prior art patents' mention of liners with "substantially uniform" thickness as meaning the liners have an uneven thickness, nothing in the patents suggests a non-perfectly uniform liner would be "at a maximum proximate the at least two radially inwardly projecting lobes" of the external tube as claimed in the '921 Patent. *Id.* In other words, the claims require more precision than simply an "uneven" liner. *Id.*

While the court agrees with Schlumberger generally that if the prior art, which the court may consider at this stage because it is discussed in the counterclaim, does not teach a liner that is thicker at the lobes, then the substance of the earlier patents could override BICO's assertion in its counterclaim that they the prior art teaches a liner that is thicker at the lobes. However, the teachings of the prior art patents are questions of fact, and the court finds it inappropriate to make such a factual finding at this stage. *Dig. Control, Inc.*, 437 F.3d at 1319. Because the court takes BICO's assertions in its counterclaim as true, the motion to dismiss the invalidity counterclaim is DENIED.

**B.     Inequitable Conduct**

BICO's third counterclaim seeks a declaratory judgment that the '921 Patent is unenforceable due to inequitable conduct. Dkt. 29. It states that patents and printed publications describing the claimed subject matter of the '921 Patent prior to January 24, 2001 (a year before the application) render the claimed subject matter invalid, and that a person of ordinary skill in the industry of

7

positive displacement motors and pumps understood that prior art manufacturing methods for stators with shaped inner surfaces inherently produced uneven liners that were thicker at the stator lobes by January 24, 2002 (the application date). *Id.* BICO claims that there were numerous patents and printed publications that were publicly accessible prior to January 24, 2001, that described this prior art. *Id.* It asserts that Schlumberger's U.S. Patent No. 7,739,792 ("the '792 Patent") is an example. *Id.* The '792 Patent describes difficulty in controlling the desired thickness of an elastomeric layer in stator bores in the prior art. *Id.* The counterclaim states that on information and belief the examiner for the '921 Patent did not have knowledge of the industry standard definitions of the terms "substantially uniform thickness," "substantially the same wall thickness," or "even walls." *Id.* The counterclaim incorporates the prosecution history of the '921 Patent, which BICO contends demonstrates this lack of knowledge. *Id.* BICO asserts(1) that the prosecuting attorney had a duty of candor with the USPTO; (2) that the prosecuting attorney had knowledge that non-uniform liners such as the stator lobes of the '921 Patent were commonly described as "substantially uniform" in the industry as is evidenced by another patent he was prosecuting at the same time; (3) that prior art manufacturing methods for liners inherently resulted in liners having varied thicknesses including slightly thicker portions at the stator lobes; and (4) that the examiner did not have knowledge of these standard terms in the industry or of prior art manufacturing techniques. *Id.* BICO alleges various mischaracterizations by the prosecuting attorneys, including that the supplemental prosecuting attorney mischaracterized the term "practically the same wall thickness" in the Artemis patent (a German patent) to mean "uniform liner thickness" even though a figure in the Artemis patent (a German patent) appears to show thicker liner at the lobes. *Id.* at 23. According to BICO, the supplemental prosecuting attorney "had a duty to disclose a person of ordinary skill's understanding of 'substantially uniform' in the initial Request for Supplemental Examination, or at

the very least, in response to the examiner's flawed conclusion based on an incomplete understanding of the Artemis reference." *Id.* at 23–24.

In its motion to dismiss, Schlumberger asserts that BICO does not provide any actual evidence that corroborates its implausible allegation of inequitable conduct. Dkt. 30. Instead, according to Schlumberger, BICO's documents confirm that terms like "even walls" and "substantially uniform thickness" do not mean thickest at the lobes. *Id.* Moreover, Schlumberger asserts that the counterclaim is not legally sufficient to assert an inequitable conduct claim because (1) patent figures do not override the express written description of the patent; (2) patents that were filed after the '921 Patent referred to in the counterclaim are not prior art; (3) manufacturing tolerances or defects that cause liners to not be exactly uniform are not material to patentability; and (4) the applicant's arguments characterizing the prior art that was disclosed cannot give rise to inequitable conduct. *Id.* Schlumberger contends that while some of the patents discussed in the counterclaim seem to have non-uniform thickness, none of them suggests a liner that is thickest at the lobes. *Id.* at 10–12. Moreover, it asserts that all of the prior art was disclosed to or considered by the USPTO and thus cannot form the basis of inequitable conduct. *Id.* at 15. The only exception is GB 2339598, and Schlumberger states that it is cumulative of other references. *Id.*

Schlumberger also responds to allegations related to Kachele's "Even wall" stator in its motion, noting that there is no support for the contention that "Even wall" means "thickest at the lobes" or that the inventors knew that it meant that. *Id.* at 16–17. Schlumberger also contends that BICO admitted that "substantially uniform" does not mean thickest at the lobes in an application for a patent it filed on November 10, 2000, in which it indicated that substantially uniform thickness meant uniform. *Id.* at 18. Finally, Schlumberger points out that if everyone knew "substantially uniform" meant "thickest at the lobes," why did the examiners not know? *Id.* at 20. Schlumberger

9

argues that the examiners are assumed to have some expertise and be familiar with the level of skill in the art. *Id.* (citing *Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

BICO responds that it pled specific facts to support four different grounds of inequitable conduct. Dkt. 32. BICO contends that the initial prosecuting attorney omitted material information related to industry understanding and misrepresented the content of the prior art with an intent to deceive the USPTO. *Id.* at 3 (citing the complaint). It also asserts that the supplemental prosecuting attorney omitted material information related to the industry understanding and misrepresented the content of the prior art with an intent to deceive the USPTO. *Id.* at 6. BICO argues that the inventors attested that they had no knowledge of Kachele's prior art stator with a non-uniform liner, but they actually did. *Id.* at 9 (citing complaint). BICO provides specifics in the complaint, including that one of the inventors met with Kachele representatives in 1999 in Houston where Kachele publicly displayed models of its stators. *See id.* at 10. With regard to the argument that all the prior art was disclosed to the USPTO, BICO argues that the references were too difficult to understand and that understating aspects of it was functionally equivalent to not disclosing it at all. *Id.* at 18.

Schlumberger replies that the counterclaim does not provide sufficient facts to reasonably infer that a specific individual knew of invalidating information that was withheld. Dkt. 33 at 1. Schlumberger argues that none of the prior art discloses liners that are thickest at the lobes, and it contends that the information regarding Kachele is inconsequential because both inventors of the '921 Patent agree that they knew about Kachele's stators and understood that they did not include a liner of non-uniform thickness on an external tube having a shaped interior surface. Dkt. 33 at 3. Schlumberger contends that the inference that one of the inventors knew that "even wall" meant

"thickest at the lobe" because he went to a booth displaying the stators is unsupported. *Id.* It asserts that BICO's own documents confirm there was no industry knowledge that "even wall" meant "thickest at the lobes" and that, moreover, all the non-cumulative documents were before the examiner and BICO cannot rebut that the attorney statements that emphasize differences between an invention and prior art and downplay similarities cannot be inequitable conduct. *Id.* (citing cases). Schlumberger asserts that BICO's argument that the prior art references were too difficult to understand should be disregarded because the references here are not very long or complex. *Id.*

While the court agrees with Schlumberger that the references here do not, at first glance, appear to be long or complex, it is premature for the court to draw conclusions regarding the meaning of certain terms in the industry. What it must do, at the motion to dismiss stage, is take the well-pleaded facts as true. BICO pleads that "a person of ordinary skill in the industry of positive displacement motors and pumps understood that prior art manufacturing methods for stators with shaped inner surfaces inherently produced uneven liners that were thicker at the stator lobes" and that "the examiner did not have knowledge of the industry standard definitions of the terms 'substantially uniform thickness,' 'substantially the same wall thickness,' or 'even walls.'" Dkt. 29 ¶¶ 27, 31, 34. Schlumberger takes issue with these claims because they are pled "on information and belief" and contends that the counterclaim does not provide any facts to back up the assertions as is required under Rule 9(b). However, the counterclaim provides examples as to why BICO believes individuals in the industry would know liners were thicker at the lobes, why the examiner must not have known this, and how the prosecution history shows that the prosecuting attorneys failed to disclose these understandings in the paragraphs that follow the claims.[1] *See, e.g., id.* ¶¶ 28–30,

---

[1] Schlumberger contends that it disclosed all of the prior art, with the exception of cumulative prior art, to the USPTO, and that the alleged omission is not inequitable conduct as a

11

32–33, 39–49. Schlumberger's arguments relating to what the prior art discloses or whether the inventor would have known about the width of the liner by visiting a booth at a conference relate to factual issues that cannot be resolved at this stage. At this point, the claim is plausible, and the claims are pled with enough particularity for the court to reasonably infer that at least one of the inventors or prosecutors[2] knew of the withheld information or of the falsity of the material misrepresentation, and withheld or misrepresented this information with a specific intent to deceive the USPTO. Accordingly, Schlumberger's motion to dismiss is DENIED.

---

matter of law, citing *Wright Asphalt Products Co., LLC v. Pelican Refining Co., LLC*, No. H-09-1145, 2011 WL 2037631 (S.D. Tex. May 20, 2011) (Rosenthal, J.). In *Wright Asphalt*, Judge Rosenthal denied a request to amend a counterclaim to add an inequitable conduct claim based on representations the prosecuting attorney made during the patent prosecution. 2011 WL 2037631, at *1. She analyzed Federal Circuit precedent and concluded that "as a general rule, when the relevant prior art is disclosed to the examiner, attorney statements emphasizing differences between the invention and the prior art while downplaying or ignoring similarities cannot be inequitable conduct unless the prior art reference is so difficult to understand that omitting or understanding aspects is functionally equivalent to not disclosing the prior art reference at all." *Id.* at *6–*9. Judge Rosenthal determined that the alleged misrepresentation in *Wright Asphalt* did 'not approach the type of affirmative misrepresentation required to give rise to an inequitable conduct claim." *Id.* at *10. It is important to note that in *Wright Asphalt*, Judge Rosenthal had already held a *Markman* hearing and construed the terms of the patent. *See Wright Asphalt Prods. Co., LLC v. Pelican Refining Co., LLC*, No. H-09-1145, 2011 WL 845917, at *1 (S.D. Tex. Mar. 7, 2011). Here, the terms have not been construed and the court finds it premature to attempt to put the prior art and alleged misrepresentations into context before it has even construed the terms in the patent-in-suit.

[2] "For purposes of identifying who owes a duty of candor to the [USPTO], [USPTO] Rule 56 defines 'individual[s] associated with the filing or prosecution of a patent application' as (1) each named inventor, (2) each attorney or agent that prepares or prosecutes the application, and (3) every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor or assignee." *Avid Identification Sys., Inc.*, 603 F.3d at 973 (quoting 37 C.F.R. § 1.56( c)).

## IV. Conclusion

Schlumberger's motions to dismiss (Dkts. 24,30) are both DENIED.

Signed at Houston, Texas on May 3, 2018.

_____
Gray H. Miller
United States District Judge