# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-3211 |
| | § | |
| BICO DRILLING TOOLS, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

The court held a *Markman* hearing in this case on August 29, 2018. Dkt. 45. The parties agree to the construction of the term "maximize" as noted at the hearing and in the parties' joint claim construction chart, which is attached to this order as Exhibit A. The parties disagree as to the construction of the phrase "an external tube comprising an outer surface and an inner surface, the inner surface comprising at least to radially inwardly projecting lobes." *See* Ex. A. This phrase is used in Claims 1 and 8 of the patent in suit. After considering the arguments presented at the hearing, the briefing, and the applicable law, the court is of the opinion that it should adopt the construction of the phrases offered by plaintiff and counterdefendant Schlumberger Technology Corporation ("Schlumberger").

### I. BACKGROUND

This case relates to Schlumberger's patent for "Optimized Liner Thickness for Positive Displacement Drilling Motors," U.S. Patent No. 6,604, 921 ("the '921 Patent"). Dkt. 1. The '921 Patent was filed on January 24, 2002, and the date of the patent is August 12, 2003. Dkt. 25, Ex. D. Schlumberger filed a request under 35 U.S.C. § 257 for supplemental examination on August 7, 2014. Dkt. 40, Ex. E. The United States Patent and Trademark Office ("USPTO" or "PTO"))

determined that the items presented by Schlumberger in the request did not raise a new question of patentability. *Id.*

Schlumberger contends that BICO infringed one of more claims of the '921 Patent, including but not limited to Claims 1 and 8, by importing, making, using, offering to sell, and/or selling products or systems that embody the patented inventions, including but not limited to stators BICO uses in various products. Dkt. 1. BICO contends that its products do not infringe on the patent because Schlumberger specifically disclaimed a portion of its invention while prosecuting the patent. Dkt. 41. Schlumberger contends that the alleged disclaimers were actually erroneous statements that it corrected during the reexamination process. Dkt. 42. It posits that the court must consider the entire prosecution history, including the USPTO's determination with regard to its request for supplemental examination, during which the USPTO indicated that the statements were erroneous statements, not disclaimers, and that the claims of the patent, not the alleged disclaimers, control. *Id.*

The court will first set forth the relevant terms of the '921 Patent. Then, it will discuss the parties' requested construction of the terms of the patent, the events leading the BICO's disclaimer claim, and the request for reexamination that Schlumberger argues clarifies that there was no disclaimer. After setting forth that history, the court will discuss the legal standard for construing patent claims and analyze how the terms at issue here should be construed.

**A.     The Patent**

The abstract of the '921 Patent states that the invention is a "stator for a positive displacement motor including an external tube" and that the "external tube includes an outer surface and an inner surface, and the inner surface includes at least two radially inwardly projecting lobes extending helically along a length of the external tube." Dkt. 40, Ex. A. It then discusses the liner

and makes no other mention of the external tube. *Id.* There are four named figures in the '921 Patent, three represent prior art and the fourth represents one embodiment of the claimed invention. *Id.* In the figure of the invention, Figure 4, the external tube is thicker at the inwardly projecting lobes. *See id.*


FIG. 4

The summary of the invention includes the same general description of the external tube. *See id.* The detailed description also only briefly mentioned the external tube.

Claim 1 states: "A stator for a positive displacement motor comprising: an external tube comprising an outer surface and an inner surface, the inner surface comprising at least two radially inwardly projecting lobes extending helically along a selected length of the external tube; and a liner disposed proximate the inner surface, the liner conforming to the radially inwardly projecting lobes formed on the inner surface and to the helical shape of the inner surface, wherein a thickness of the liner is at a maximum proximate the at least two radially inwardly projecting lobes." *Id.*

Claim 8 similarly states: "A positive displacement motor comprising: a stator comprising an external tube and an inner surface, the inner surface comprising at least two radially inwardly projecting lobes extending helically along a selected length of the external tube, and a liner disposed proximate the inner surface, the liner conforming to the radially inwardly projecting lobes formed

3

on the inner surface and to the helical shape of the inner surface, wherein a thickness of the liner is at a maximum proximate the at least two radially inwardly projecting lobes . . . ." *Id.*

**B.      The Requested Construction**

Schlumberger requests that the court construe the following phrase, used in Claims 1 and 8 of the '921 Patent, in accordance with the plain and ordinary language used in the claims: "an external tube comprising an outer surface and an inner surface, the inner surface comprising at least two radially inwardly projecting lobes." Dkt. 36.  BICO seeks to add the phrase "with the external tube having an increased wall thickness at the inwardly projecting lobes" so that the entire phrase reads: "an external tube comprising an outer surface and an inner surface, the inner surface comprising at least to radially inwardly projecting lobes, with the external tube having an increased wall thickness at the inwardly projecting lobes." *Id.*  BICO asserts that Schlumberger disclaimed the extent to which the claims could encompass an external tube *without* an increased wall thickness at the inwardly projecting lobes when it responded to the USPTO's initial rejection of the patent as unpatentable over Bottos et al. (Patent No. 6,309,195) in view of Moller (Publication Number DE 2,017,620). Dkt. 41 & Ex. 4.

**C.      The Alleged Disclaimer**

On January 7, 2003, the patent examiner rejected several claims in the proposed patent, including claims 1 and 8.  Dkt. 41, Ex. 4.  The patent examiner noted that the Bottos et al. patent (Patent No. 6,309,195) failed to disclose a thickness for the liner, and Moller (Publication Number DE 2,017,620) taught "that it is conventional in the Moineau art to utilize the thickness of the liner (2) being at a maximum proximate the at least two radially inwardly projecting lobes" and that the "thickness of the liner (2) is selected to form a desired level of compression between the liner and a rotor." *Id.* (citing Figure 2 in the ''921 Patent and identifying numbers associated with that figure).

The examiner felt it "would have been obvious to one having ordinary skill in the art at the time the invention was made, to have utilized the thickness of the liner being varied, as taught by Moller in the Bottos et al. apparatus since the use thereof would have improved the sealing performance between the rotor and stator." *Id.*

In a response dated April 8, 2003 (the "Alleged Disclaimer"), Schlumberger's counsel made various representations, some of which BICO contends limited the scope of the invention. First, Schlumberger requested some amendments to the specification relating to the thickness of the liner and description of Figure 4. Dkt. 41, Ex. 3. Schlumberger then made representations about the external tube. *Id.* It stated that "Figure 4 clearly illustrates one of such embodiments. As shown in Figure 4, the external tube and the liner are <u>both</u> 'shaped,' i.e., both are thicker at the inwardly projecting lobes." *Id.* at 6 (emphasis in original). Schlumberger noted that "[i]n contrast, Bottos et al. discloses a stator having a liner with a constant thickness." *Id.* "In addition," according to Schlumberger,

> the external tube 320 of a stator according to Bottos et al. has an identical thickness all around (as shown in Figure 3) and does not have an increased thickness to form the inwardly projecting lobes. Thus, the external tube 320 and the liner 330 of Bottos et al. are each of an identical thickness. *In contrast, the external tube and the liner of the present invention each have an increased thickness at the inwardly projecting lobes.*

*Id.* at 7 (referring to numbers used in Figure 3 of the '921 Patent) (emphasis added). Finally, further attempting to distinguish Bottos and Moller, Schlumberger asserted that "[e]ven if one were to combine Bottos et al. and Moller, Moller does not provide what is missing in Bottos et al.—*a stator having an external tube with increased thickness at the inwardly projecting lobes*. Consequently, combination of Bottos et al. and Moller cannot render claims 1 and 8 obvious." *Id.* at 8 (emphasis added).

5

After this response, the examiner issued the patent without changing the text of Claims 1 or 8 and without citing any reasons for allowance of the application. Dkt. 41, Ex. 9 at 3.

**D.**     **Schlumberger's Requested Reexamination**

On December 18, 2013, Schlumberger filed a complaint against BICO Drilling Tools in the Eastern District of Texas alleging infringement of the '921 Patent, including but not limited to Claims 1 and 8. Dkt. 41, Ex. 5. On April 14, 2014, it filed a notice of voluntary dismissal. Dkt. 41, Ex. 7. On August 7, 2014, it filed a request for supplemental examination with the USPTO (the "Reexamination Request"). Dkt. 41, Ex. 8. Schlumberger requested that the USPTO consider, reconsider, or correct the patent in light of the patent history, the Alleged Disclaimer, and various prior art. *Id.* The Reexamination Request noted that the Alleged Disclaimer "made arguments distinguishing claim 1 from Bottos based on the specific embodiment of Figure 4" and indicated that "'the external tube and the liner of the present invention each have an increased thickness at the inwardly projecting lobes.'" Schlumberger asserted in the Reexamination Request that, notwithstanding these representations in the Alleged Disclaimer, "the '921 Patent claims only require that the external tube comprise 'an outer surface,' and do not limit the outer surface to any particular cross-sectional shape, circular or otherwise." *Id*. Schlumberger admitted that "the arguments relating to the thickness of the external tube, as opposed to the thickness of the liner, might have unintentionally led the Examiner to misunderstand the scope of the claims." *Id.* Schlumberger also noted the similar and also potentially misleading statements distinguishing Moller. *Id.* Schlumberger asserted that "a substantial new question of patentability may exist as to whether claims 1-15 of the '921 Patent, when properly understood, are patentable over Bottos and Moller." *Id.* Schlumberger concluded its Reexamination Request by asking for a supplemental examination

6

of claims 1-15 of the '921 Patent and an issuance of a supplemental examination certificate. *Id.* at 60.

The USPTO, however, determined that the items of information presented in the Reexamination Request did "not raise a substantial new question of patentability" (the "Reexamination Denial"). Dkt. 41, Ex. 9. The USPTO agreed with Schlumberger that "the current independent claims do not require the tube and liner being thicker at the lobes." *Id.* at 3. It then noted that there was "no evidence that the argument regarding the thicker tube and liner at the lobes resulted in the allowance of the application" and that "[o]ne *misleading or erroneous argument* does not impair the allowance of a patent application if it is shown to claim a novel and unobvious subject matter, in this instance the thicker liner proximate the lobes." *Id.* (emphasis added). It went on to state that in "this case, the liner being thicker proximate to the lobes was claimed, argued and is seen to have led to the allowance of the application." *Id.* at 3–4. After also discussing why the prior art references did not require reexamination, the USPTO determined that "no new question of patentability affecting at least one claim of U.S. Patent No. 6,604,921 is raised by the present request for supplemental examination. Accordingly, *ex parte* reexamination of the patent will not be ordered pursuant to 35 U.S.C. 257." *Id.* at 6 (emphasis in original).

## II. LEGAL STANDARD

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See id.* at 1313. The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See id.* at 1314. Courts give claim terms

7

their "ordinary and customary meaning" as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Id.* at 1312–13.

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Id.* at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* (citations omitted). Differences among the claim terms can also assist in understanding a term's meaning. *Id*. "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Id.* at 1316. In these situations, the inventor's lexicography governs. *Id*. The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). Courts must, however, recognize "the distinction between using the specification to interpret the meaning of a claim and importing limitations from

the specification into the claim." *Phillips*, 415 F.3d at 1323. "To avoid importing limitations from the specification into the claims, it is important to keep in mind the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Id.* Additionally, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)).

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The prosecution history "consists of the entire record of proceedings in the Patent and Trademark Office," including "all express representations made by or on behalf of the applicant to the examiner to induce a patent grant." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985). "[T]he prosecution history . . . limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Id.* This "prosecution history estoppel" "precludes a patent owner from obtaining a claim construction that would resurrect subject matter surrendered during prosecution of his patent application. The estoppel applies to claim amendments to overcome rejections based on prior art , . . . and to arguments submitted to obtain the patent." *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1362 (Fed. Cir. 1983).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (citations omitted). Technical dictionaries and treatises may help explain the underlying technology and the manner in which one skilled in the art might use claim terms. *Id.* at 1318. However, they may also provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. Similarly, expert testimony may aid in explaining the underlying technology and determining the particular meaning of a term in the pertinent field. *Id.* But an expert's conclusory, unsupported assertions as to a term's definition are unhelpful. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

### III. ANALYSIS

#### A. Disclaimer or Erroneous Statement?

The main issue with which the court is faced in construing the at-issue term in Claims 1 and 8 is whether Schlumberger's statements in response to the patent examiner's initial rejection were disclaimers or whether they were just erroneous statements. Schlumberger urges the court to consider the entire prosecution history, including the USPTO's indication after its request for reexamination a decade after the patent issued that "[o]ne misleading or erroneous argument does not impair the allowance of a patent application," and determine that the statements made in 2003 were merely erroneous and that the express requirements of the claims themselves control. BICO argues that the statements made in 2003 were clearly disclaimers made so that the patent examiner would issue the patent.

While claim terms are entitled to a heavy presumption that they carry their ordinary and customary meaning to those skilled in the art, "when a patent applicant surrendered claim scope during prosecution before the PTO, the ordinary and customary meaning of a claim term may not

apply." *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007). This doctrine of disclaimer "'promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution.'" *Id.* (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003)). If, however, the alleged disavowal is ambiguous, the doctrine does not apply. *Id.* It "must 'be both clear and unmistakable' to one of ordinary skill in the art." *Id.*

If there is no clear and unmistakable disavowal and instead an "erroneous remark by an attorney in the course of prosecution of an application," the terms of the claims control. *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989). "An error in the prosecution record must be viewed as are errors in documents in general; that is, would it have been apparent to the interested reader that an error was made, such that it would be unfair to enforce the error." *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1348 (Fed. Cir. 2001). For instance, in *Biotec Biologische*, the erroneous statement was contrary to the plain language of the claims and the specification and also to other statements in the same prosecution document. *Id.*

In *Rambus Inc. v. Infineon Technologies Ag*, 318 F.3d 1081 (Fed Cir. 2003), Infineon Technologies contended that the term "integrated circuit device" had a different meaning in one of the patents at issue due to representations made to the USPTO during the prosecution of the patent. 318 F.3d at 1088. The Federal Circuit noted that the claim language defines an invention's scope and that generally the words in the claim language bear their normal meaning used in the field. *Id.* But, "inventors may act as their own lexicographers and use the specification to supply implicitly or explicitly new meanings for the claim terms." *Id.* Construing courts must therefore consult the written description *and* the prosecution history, and they may not read unstated limitations into the

11

claims. *Id.* The district court in *Rambus* construed the term "integrated circuit device" to include a device identification register, interface circuitry, and comparison circuitry even though the claim language did not indicate that it included these three components. *Id.* at 1089. The Federal Circuit found that the claim did not require comparison circuitry or a device identification register and that the district court's construction did not merely construe the actual words of the claim but instead read into the claims two new limitations. *Id.* The Federal Circuit noted that the district court had "placed too much emphasis on a single introductory comment in the prosecution history" that appeared after the examiner had rejected the pending claims in light of another patent. *Id.* The court stated that the "incorrect statement in the prosecution history does not govern the meaning of the claims." *Id.* at 1090. The court determined the claim language itself controlled and not the "facially inaccurate remark during prosecution." *Id.*

The *Rambus* court relied extensively on *Intervet America, Inc. v. Kee-Vet Laboratories, Inc.* In *Intervet America*, the invention was a vaccine for a poultry disease and the method for making the vaccine. 887 F.2d at 1051. Intervet sued Kee-Vet for patent infringement. *Id.* at 1052. The district court construed Intervet's claims as limiting the vaccine to unattenuated viruses and a single administration scheme, basing this construction on part of the patent prosecution history. *Id.* The court ultimately found no infringement because the defendant's vaccine was an attenuated virus and not effective with a single administration. *Id.*

The Federal Circuit stressed that "courts cannot alter what the patentee has chosen to claim as his invention, . . . limitations appearing in the specification will not be read into claims, and . . . interpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'" *Id.* at 1053 (quoting *E.I Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1439, 1433 (Fed. Cir. 1988)). During the patent

12

prosecution, Intervet's attorney had "attempted to distinguish from the principal prior art reference . . . on the ground that their vaccination scheme involved two vaccinations with their strain of virus to get protections whereas applicants' strain" took a "single vaccination at the age of 14 days." *Id.* The patent examiner said that the claims were not limited to a single vaccination scheme that would distinguish them from this prior art, and the attorney amended three of the claims to refer to a single administration, but he did not amend the other claims. *Id.* at 1054. The attorney made the remark that "'the claims are restricted to a single vaccination scheme,'" which was not true as to all the claims. *Id.*

The Federal Circuit held that when "it comes to the question of which should control, an erroneous remark by an attorney in the course of prosecution of an application or the claims of the patent as finally worded and issued by the Patent and Trademark Office as an official grant, we think the law allows no choice. The claims themselves control." *Id.* It noted, however, that there are times when an attorney says something during prosecution that "may be held against the patentee on the theory of estoppel." *Id.* The court provided the example of attempting to "*expand* the literal meaning of a claim under the patent law doctrine of equivalents and the prosecution history shows that the expanded scope would be inclusive of subject matter the attorney had represented to the examiner was *not* intended to be included in order to get the claim allowed." *Id.* However, the court noted that there is a "presumption [that] the examiner did his duty and knew what claims he was allowing." *Id.*

Here, BICO asks the court to read a limitation into the claims due to Figure 4 and representations made by counsel in the prosecution history. BICO argues that in *Rambus* and *Intervet* the relevant issue related to reading claim limitations from one independent claim into

separate independent claims based on statements made during prosecution, which it asserts is entirely unrelated to this case. Dkt. 41 at 20.

Schlumberger points out that the burden is on BICO to prove its claims are limited by a clear and unmistakable disclaimer that would have been evident to one skilled in the art. Dkt. 42 at 2 (citing *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016) ("The party seeking to invoke prosecution history disclaimer bears the burden of proving the existence of 'clear and unmistakable' disclaimer that would have been evident to one skilled in the art.")). Schlumberger posits that BICO did not meet this burden as it did not consider the *complete* prosecution history (including the supplemental examination) and prior art or submit any affidavits indicating how one of ordinary skill in the art understands the scope of the claims. *Id.* It points out that a patent examiner may be considered one of ordinary skill in the art and that the patent examiner's construction of claims carries significant weight. *Id.* (citing *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, 412 F. App'x 270, 276 (Fed. Cir. 2011) (unpublished) ("Because an examiner in reexamination can be considered one of ordinary skill in the art, his construction of the asserted claims carries significant weight.")). Schlumberger asserts that the patent examiner's statements regarding the claim scope is the *only* evidence of whether one of ordinary skill in the art would find the original prosecuting attorney's arguments erroneous, and BICO failed to submit any evidence to rebut this intrinsic evidence and instead provides only attorney argument. *Id.* at 5.

Certainly, the statements made in the Alleged Disclaimer appear to limit Claims 1 and 8 in the way BICO now requests the court construe them. However, the court must start with the heavy presumption that the claims carry their ordinary and customary meaning, and the claims read in isolation certainly do not contain such a limitation. If it couples the presumption that the claims mean what they say with the fact that the USPTO, rather than reexamining the patent due to a

14

potential disclaimer resulting in a limitation of the claim, determined that the statements about the external tube were "misleading or erroneous," it leads to a different conclusion. The Federal Circuit has stated that reexamination often serves to provide "the district court with the expert view of the PTO." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). If the court looks at the arguments through the lens of a person not skilled in the art, it is somewhat convinced by the argument that the statements in the Alleged Disclaimer clearly and unmistakably disavow that the invention includes an external tube that does not get thicker at the lobes. However, since the court has the benefit of the opinion of one skilled in the art---the patent examiner's response to the Reexamination Request---and there is a presumption that the claims mean what they say, the court must find that the statements made in the Alleged Disclaimer were not a disclaimer and that the claims should be construed as they are written.

**B.      What About Reliance?**

BICO argues that no court has ever held that a supplemental examination can be used to affect claim scope in any way. Dkt. 41 at 20. It asserts that Schlumberger's attempt to expand its claim scope over a decade after the patent issued is counter to the public notice function of a patent and its prosecution history. *Id.* It asserts that supplemental examination is a relatively new procedure used to cure potential inequitable conduct by identifying information that should have been considered during the original prosecution. *Id.* at 21. It argues that the statute and rules governing supplemental examination make clear that the effect of examinations is limited to curing inequitable conduct. *Id.* at 22 (citing 35 U.S.C. § 257(c)(1)).[1] It notes that the USPTO can order a

---

[1] Under this statute, which discusses the effect of supplemental examinations to consider, reconsider, or correct information, a "patent shall not be held unenforceable on the basis of conduct relating to information that had not been considered, was inadequately considered, or was incorrect in a prior examination of the patent if the information was considered, reconsidered, or corrected during a supplemental examination of the patent. The making of a request under subsection (a), or

15

reexamination or determine that there is no substantial new question of patentability and argues that if there is no reexamination, the supplemental examination itself can have no effect on the patent or the scope of its claims. *Id.* It points to rules that indicate that supplemental examination cannot correct mistakes in the original prosecution. *Id.* at 23 (citing *Manual of Patent Examining Procedure*, Ex. 11, § 2809.1 (noting the "supplemental examination will not result in any correction" if there is no substantial new question of patentability)). Thus, BICO asserts that since there was no substantial new question here, Schlumberger was unable to retract its alleged "erroneous statement." *Id.* BICO also argues that expanding the scope of claims based on the supplemental examination runs counter to public policy because allowing an expansion of patent coverage ten years after the patent issued would "inequitably ensnare products that fell outside the original scope of the patents and undermine the vital public notice function of the patent and prosecution history." *Id.* at 25–26.

Schlumberger, relying on *Phillips*, 415 F.3d at 1317, argues that the prosecution history consists of the *complete* record of proceedings before the USPTO, including the findings made during a supplemental examination. Dkt. 42. Schlumberger points out that it is not attempting to recapture disclaimed claim scope, it is asserting that the original prosecuting attorney's statements were erroneous or ambiguous in light of the claims, the specification, the prior art tubes, and one of ordinary skill and knowledge of such tubes. *Id.* at 7. It points out that under *Intervet*, an erroneous remark by an attorney does not control, the claims themselves control. *Id.* And, it argues that the USPTO's statements in the supplemental examination, which is the only intrinsic evidence on file regarding what one of ordinary skill in the art would understand the claims to be, indicates the statements were erroneous as the claims themselves do not require the tube to be thicker at the lobes.

---

the absence thereof, shall not be relevant to the enforceability of the patent under section 282." 35 U.S.C. § 257(c)(1).

*Id.* at 8. Thus, according to Schlumberger, there is no disclaimer to cure or correct. *Id.* As far as the rules cited by BICO regarding the effect of the supplemental examination, Schlumberger states that it was not seeking to correct the patent but wanted the USPTO to consider or reconsider its determination of patentability in light of the erroneous statements and other prior art not previously considered. *Id.* It further argues that the supplemental examination can affect the claim scope because it, like any other proceeding before the USPTO, is part of the prosecution history. *Id.* BICO has the burden of showing there was a clear and unmistakable disclaimer, but it did not provide any affidavits showing what a person of ordinary skill in the art would believe. Schlumberger did provide evidence of what one skilled in the art would think—the discussion in the Reexamination Denial. Even if the reexamination has no effect on the patent or scope of the claims, it can tell the court what one skilled in the art thinks the claim scope is since the patent examiner is one skilled in the art. Thus, while the court finds itself somewhat swayed by BICO's argument regarding its reliance on the statements in the Alleged Disclaimer, as it seems inappropriate to divorce the Reexamination Request from the intervening time period, if the court considers the Reexamination Denial not as a mere opinion released a decade later but instead as evidence of what one of ordinary skill in the art would believe the claims to mean, which was certainly derived from a consideration of the claims, prior art, *and* the Alleged Disclaimer, then the court must conclude that Schlumberger's construction—the plain and ordinary meaning of the term that is used in the claims—is the correct construction.

## IV. Conclusion

The court hereby ADOPTS Schlumberger's claim construction for the term "an external tube comprising an outer surface and an inner surface, the inner surface comprising at least to radially inwardly projecting lobes," in that no construction is needed. The term shall have its plain and ordinary meaning. The parties agree as to the construction of all other terms.

Signed at Houston, Texas on September 20, 2018.

_____
Gray H. Miller
United States District Judge